**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DAL SEOK YOO and | ) | |
| JOSHUA KIM, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | FILE NO.  1:20-cv-01103-MHC-CCB |
| v. | ) | |
| | ) | |
| BEULAH HEIGHTS | ) | |
| UNIVERSITY, Inc., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

<u>**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN**</u>

1.     **Description of Case:**

      **(a)     Describe briefly the nature of this action:**

This is an action for retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Plaintiffs seek injunctive relief, back pay, front pay, compensatory and punitive damages, and attorney's fees and costs against Defendant.

      **(b)     Summarize, in the space provided below, the facts of this case.  The summary should not be argumentative nor recite evidence.**

1

**Plaintiff's Facts:**

Plaintiffs are former employees of Defendant at Defendant's campus. During the relevant time period Plaintiff Kim was developing the new Master of Divinity Program and Plaintiff Yoo assisted him by providing clinical feedback. Plaintiff Kim asked Plaintiff Yoo to join Defendant to develop a network of clinical setting and modify the current Master of Divinity curriculum to fit into the new Master of Divinity Program. Defendant hired Plaintiff Yoo as an Associate Professor and Director of Clinical Training beginning on or about April 10, 2017 to help develop Defendant's Master of Divinity Program.

Plaintiff Yoo is a South Korean citizen and her employment with Defendant was dependent on her ability to work in the United States under an H 1B work visa. Plaintiff Yoo entered into a Letter of Understanding with Defendant which stated in part that Plaintiff Yoo would be employed with Defendant during the Optional Practical Training period of her prior visa, which lasted until July 7, 2017 and that once Plaintiff Yoo received an H-1B visa, she would "be hired as fulltime faculty with the title of Associate Professor and Director of Clinical Training."

On her own initiative and without financial support from Defendant, Plaintiff Yoo created a program brochure and visited clinical sites to gain support

for the program, met with many clinical supervisors and other professionals and gathered a great deal of information that would be helpful for the new program. Plaintiff Yoo was instructed to report the progress of her work to Plaintiff Kim. Plaintiff Kim knew about all the work Plaintiff Yoo was doing to establish the program and the contributions she made in successfully developing the network of clinical settings.

Shortly after beginning her employment with Defendant, Plaintiff Yoo experienced unwelcomed and harassing conduct from Dr. John Kim, one of Defendant's long-standing faculty members. On April 18, 2017 after a worship service, Dr. John Kim approached Plaintiff Yoo and introduced himself to her as the Vice President of Defendant's Korean Program. Dr. John Kim asked Plaintiff Yoo a number of personal questions regarding her nationality, living location and church affiliation. Dr. John Kim then asked Plaintiff Yoo to write down her name and personal phone number. Plaintiff Yoo provided her number to Dr. John Kim and then walked away from him because she felt uncomfortable and did not wish to speak with him any further.

After Plaintiff Yoo returned to her office space, Dr. John Kim entered her office space uninvited, approached her, and attempted to hug Plaintiff Yoo.

3

Plaintiff Yoo felt uncomfortable and stepped back, saying "No", while using her hands to pull Dr. John Kim away from her. Dr. John Kim, however, continued to approach Plaintiff Yoo. At that time, Plaintiff Yoo felt physically unsafe and uncomfortable due to Dr. John Kim's actions and she left the area.

That same day, however, Plaintiff Yoo encountered Dr. John Kim in the parking lot and he again approached her and asked her several questions about her financial affairs and her personal living location. Plaintiff Yoo did not respond to Dr. John Kim.

Plaintiff Yoo alleges that Dr. John Kim was in a position of authority over Plaintiff Yoo and that Defendant tasked Plaintiff Yoo to work under the authority of Dr. John Kim. Following these instances of unwelcomed behavior and harassing behavior by Dr. John Kim, Plaintiff Yoo expressed her concerns to Dr. Rodney Jackson, the Chair of Defendant's Department of Religious Studies. Dr. Jackson advised Plaintiff Yoo to report Dr. John Kim's actions to Human Resources.

Plaintiff Yoo met with Dr. Jackson and Trish Staton of Defendant's Human Resources Department and reported the incident. Ms. Staton then asked Plaintiff Yoo to prepare a written report about the incident, which Plaintiff Yoo submitted on or about April 19, 2017.

On April 24, 2017, Dr. John Kim again entered Plaintiff Yoo's office space, uninvited and told her he had just come back from a meeting with Dr. Mark Hardgrove, the Dean and Vice President for Academics for Defendant who had apparently told Dr. John Kim of Plaintiff Yoo's complaint. Dr. John Kim stated that Plaintiff Yoo should share her feelings with him instead of reporting it to the school if she felt uncomfortable with him and stated, "You know what I'm saying, right?" Dr. John Kim did not wait for an answer and instead left the area. Plaintiff Yoo felt threatened and unsafe as a result of this encounter.

On April 27, 2017, Dr. John Kim again came to Plaintiff Yoo's office area and told her he had read through her complaint letter about him. Plaintiff Yoo stated that she felt uncomfortable and still did not want to talk with him. Dr. John Kim, however, ignored her and continued to speak with her. Plaintiff Yoo responded that she felt uncomfortable, that Dr. John Kim had not listened to her, and that he was continuing to violate her personal space. Plaintiff Yoo asked Dr. John Kim again to stop and at this point, Dr. John Kim left her office area.

Plaintiff Yoo memorialized the April 24 and April 27 incidents in subsequent written complaints to Defendant's Human Resources Department in May 2017.

After Plaintiff Yoo engaged in protected speech with her complaints concerning Dr. John Kim, Defendant began retaliating against Plaintiff Yoo. On May 30, 2017, just over one month after Plaintiff Yoo's initial complaint, Dr. Hardgrove sent Plaintiff Yoo an email in which he stated that if her H 1B status was not granted on or before July 7, 2017, Defendant would not be able to maintain Plaintiff Yoo's employment.

Plaintiff Yoo, however, experienced significant delays with Defendant's processing her H 1B visa after she submitted her sexual harassment complaint. On May 9, 2017, Plaintiff Yoo discovered that her petition for H 1B visa was in a pending status because the attorney working on the application had been waiting for a response from Defendant. Plaintiff Yoo requested several times that the process be accelerated so that she would not have any gap in her employment. Plaintiff Yoo had submitted her visa application right after she began working for Defendant, but Defendant did not submit the application until June 12, 2017, more than 2 months later.

On or about June 5, 2017, Plaintiff Yoo sent a revised job description to Ms. Staton and on or about June 12 asked Ms. Staton to check on the status of her petition with the attorney assisting with the application. On June 21, 2017, Plaintiff Yoo pointed out mistakes that had been made on the paperwork to Ms. Staton and

again expressed her concerns about the delay of the application. On June 22, 2017, Plaintiff Yoo learned that the mistakes had been corrected and asked if it were possible to have her petition filed by that week. Plaintiff Yoo was informed this would not be possible because it was already Friday and Defendant had not yet sent the signed paperwork. Plaintiff Yoo asked Ms. Staton to accelerate the progress and send the paperwork through Express Mail or other expedited service if possible. Ms. Staton did not respond to this request.  On June 23, 2017, Plaintiff Yoo received an email from the firm handling the application stating that her petition had been filed and the process would be monitored.

On or about August 30, 2017, Plaintiff Yoo filed a charge of discrimination with the EEOC. Plaintiff Yoo's visa was approved on or about October 31, 2017. Following approval of her visa, Plaintiff Yoo wrote an email to Dr. Jackson, Dr. Hardgrove, and Ms. Staton asking what she needed to do to begin working for Defendant. On or about November 9, 2017, Dr. Hardgrove sent Plaintiff Yoo a letter in which he stated in part that Defendant could not offer her a position at that time.

During Defendant's investigation of Plaintiff Yoo's Charge of Discrimination, Plaintiff Kim assisted and participated in an investigation, proceeding, or hearing under Title VII.

7

On or about April 25, 2018, Ms. Staton requested Plaintiff Kim interview with Defendant's legal counsel.  Before the interview began, Plaintiff Kim asked who would know the content of this interview and was told Dr. Karanja (Defendant's President), his son (Peter Karanja), Dr. Jackson, and Ms. Staton.

Plaintiff Kim stated he was concerned that he was risking his job by telling the truth about Plaintiff Yoo's job performance.  Nevertheless, Plaintiff Kim shared the quality of Plaintiff Yoo's work and the substantial efforts she had made to advance and develop the program. Plaintiff Kim also stated that this was not the first instance of inappropriate behavior by Dr. John Kim and that it was common knowledge he had behaved in a similar manner before. On May 8, 2018, Defendant terminated Plaintiff Kim only days after he engaged in protected activity.

Plaintiff Kim noticed that Dr. Hodge, Chair of Religious Studies, signed the letter of termination and not the President, the Vice President and Dean of Academic Affairs, or Human Resources, which, in his experience, was a deviation from the usual procedure.  Plaintiff Kim asked why Defendant had terminated him but received no answer.  Ms. Staton told Plaintiff Kim that Defendant's Cabinet decided to terminate him.

But on May 16, 2018, Dr. Hardgrove, who was Vice-President and Dean of Academic Affairs and a member of the Cabinet, informed Plaintiff  Kim that no

one told him of Plaintiff Kim's termination and that he only found out about a week later.  Plaintiff Kim told Dr. Hargrave that Ms. Staton stated that the Cabinet decided to terminate him.  Dr. Hardgrove informed Plaintiff Kim that the Cabinet did not decide this.

**Defendant's Facts:**

On March 29, 2017, Beulah Heights University, Inc. extended an offer to Plaintiff Dal Seok Yoo to begin her employment with Defendant, on April 10, 2017, as an Associate Professor and Director of Clinical Training. As part of her job duties, Plaintiff Yoo was tasked with developing Defendant's Master of Divinity program.  Plaintiff Yoo reported to the Chair for the Department of Religious Studies, Dr. Rodney Jackson. However, shortly after extending Plaintiff Yoo an offer of an employment, Defendant was informed that Plaintiff Yoo had only Optional Practical Training ("OPT") immigration status which was set to expire on July 7, 2017.  Defendant agreed to assist Plaintiff Yoo in obtaining her H1-B visa, despite providing such assistance being contrary to its normal practice.

During April 2017, Plaintiff Yoo complained to Defendant alleging she was harassed by Dr. John Kim, who had no supervisory authority over Plaintiff. Plaintiff Yoo alleged that Dr. John Kim asked her personal questions about her

background, purportedly attempted to greet her with a hug, and attempted to apologize to her for making her feel uncomfortable. Defendant promptly investigated Plaintiff Yoo's complaints. Defendant's investigation did not reveal behavior rising to the level of sexual harassment. However, based on the mere fact that Plaintiff Yoo complained about Dr. John Kim's behavior, Defendant discussed Plaintiff Yoo's complaints with Dr. John Kim and issued Dr. John Kim a written warning.

Throughout her employment, Defendant had issues with Plaintiff Yoo's performance, completely unrelated to her complaints of sexual harassment. Plaintiff Yoo never reported any progress in the development of the Master of Divinity program to her supervisor.  She also never supplied Defendant with any written work product evidencing her progress, including course curriculums or syllabi. Therefore, due to the lack of evidence that the program was ready to be launched, in June 2017, Defendant decided to postpone the beginning of the Master of Divinity program. Defendant ultimately decided to suspend the launch of all new programs and focus on developing existing programs. Due to its prior commitment to Plaintiff Yoo, Defendant decided that Plaintiff Yoo would remain employed throughout the remainder of her OPT. However, once her OPT expired, Plaintiff Yoo would no longer be employed by Defendant as the position that was

originally hired to fill no longer existed. Nevertheless, Defendant decided that it would continue assisting her in her efforts to obtain her H1-B visa.

Defendant and its attorneys timely submitted all required paperwork and payments associated with Plaintiff Yoo's H-1B visa application. Any delays in Plaintiff Yoo's visa were not due to any delay or inaction on behalf of Defendant. Upon information and belief, the Federal government suspended premium processing of visa applications during this time, including Plaintiff Yoo's application.

In August 2017, Plaintiff Yoo filed a Charge of Discrimination against Defendant. From approximately May 2018 through December 2018, Defendant, its employees and its attorneys participated in the Equal Employment Opportunity Commission's ("EEOC") investigation into Plaintiff Yoo's Charge of Discrimination.  On April 28, 2018, Plaintiff Joshua Kim participated in an interview with Defendant's legal counsel.  In early May 2018, Plaintiff Joshua Kim engaged in insubordinate behavior toward his supervisor Dr. Brian Hodges. On May 8, 2018, Plaintiff Joshua Kim was terminated for his behavior. Defendant did not terminate Plaintiff Joshua Kim's employment for reasons related to his participation in the EEOC's investigation.

Defendant denies that it retaliated against Plaintiff Yoo or Plaintiff Kim, that

11

it interfered with Plaintiffs' legal rights, or that it engaged in any otherwise illegal practices with respect to Plaintiffs. Defendant submits that all actions taken with respect to Plaintiffs were taken for legitimate, non-discriminatory, non-retaliatory business reasons.

**The legal issues to be tried are as follows**:

1. Whether Defendant retaliated against Plaintiff Yoo in violation of Title VII for her exercising protected rights;

2. Whether Defendant retaliated against Plaintiff Kim in violation of Title VII for his exercising protected rights;

3. The amount of each Plaintiff's lost wages and economic benefits to which each Plaintiff is entitled to as damages;

4. The amount of compensatory damages necessary to compensate each Plaintiff;

5. The amount of punitive damages necessary to punish Defendant for its unlawful conduct, and to deter them from engaging in similar unlawful conduct in the future;

6.  The amount of reasonable attorney's fees and costs of litigation to which Plaintiffs are entitled should they prevail.

7.  The amount of reasonable attorney's fees and costs of litigation to which Defendants are entitled should they prevail.

The parties reserve the right to add or delete issues to be tried as discovery in this case ensues.

**(d)   The cases listed below (include both style and action number) are:**

(1)   Pending Related Cases:   **None**.

(2)   Previously Adjudicated Related Cases:   **None.**

**2.   This case is complex because it possesses one (1) or more of the features listed below (please check):**

\_\_\_\_\_ (1)  Unusually large number of parties.
\_\_\_\_\_ (2)  Unusually large number of claims or defenses.
\_\_\_\_\_ (3)  Factual issues are exceptionally complex.
\_\_\_\_\_ (4)  Greater than normal volume of evidence.
\_\_\_\_\_ (5)  Extended discovery period is needed.
\_\_\_\_\_ (6)  Problems locating or preserving evidence.
\_\_\_\_\_ (7)  Pending parallel investigations or action by government.
\_\_\_\_\_ (8)  Multiple use of experts.
\_\_\_x\_\_ (9)  Need for discovery outside United States boundaries.
\_\_\_\_\_ (10) Existence of highly technical issues and proof.
\_\_\_\_\_ (11) Unusually complex discovery of electronically stored information.

The parties anticipate that certain discovery may potentially need to be conducted outside United States boundaries given the international location of certain parties and potential witnesses.

13

3.    **Counsel:**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

> **Plaintiff**:       Thomas J. Mew
> Buckley Beal, LLP
> 600 Peachtree St. NE, Suite 3900
> Atlanta, GA 30308
> Telephone:  (404) 781-1100
> Facsimile:   (404) 781-1101
> tmew@buckleybeal.com

> **Defendant**:       Robert A. Luskin
> Goodman McGuffy LLP
> 3340 Peachtree Road, NE, Suite 2100
> Atlanta, GA 30326
> Telephone:  (404) 264-1500
> Facsimile:   (404) 264-1737
> RLuskin@GM-LLP.com

4.    **Jurisdiction: U.S. District Court, Northern District of Georgia**

**Is there any question regarding this Court's jurisdiction?**

          ___ Yes                          _X_  No

**If "yes", please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection.  When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.**

5.        **Parties to This Action:**

(a) **The following persons are necessary parties who have not been joined:**

None known at this time.

(b) **The following persons are improperly joined as parties:**

None.

(c) **The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

None.

(d) **The parties shall have a continuing duty to inform the court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

6.   **Amendments to the Pleadings:**

**Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15.  Further instructions regarding amendments are contained in LR 15.**

(a) **List separately any amendments to the pleadings which the parties anticipate will be necessary:**

None known at this time.

(b) **Amendments to the pleading submitted LATER THAN THIRTY (30) DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

7.   **Filing Times For Motions:**

15

All motions should be filed as soon as possible.  The local rules set specific filing limits for some motions.  These times are restated below.

All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.  Local Rule 7.1A(2).

    (a)    *Motions to Compel*:  before the close of discovery or within the extension period allowed in some instances.  Local Rule 37.1.

    (b)    *Summary Judgment Motions*: within thirty (30) days after the close of discovery, unless otherwise permitted by court order.  Local Rule 56.1.

    (c)    *Other Limited Motions*:  refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

    (d)    *Motions Objecting to Expert Testimony*:  <u>Daubert</u> motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.

## 8.    Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.  NOTE: Your initial disclosures should include electronically stored information. Refer to Fed.R.Civ.P. 26(a)(1)(B).

The parties do not object to serving initial disclosures.

## 9.    Request for Scheduling Conference:

Does any party request a scheduling conference with the Court? If so,

please state the issues which could be addressed and the position of each party.

The parties do not request a scheduling conference at this time.

**10.   Discovery Period:**

**The discovery period commences 30 days after the appearance of the first defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.**

**Cases in this Court are assigned to one of the following three (3) discovery tracks: (a) zero (0)-months discovery period, (b) four (4)-months discovery period, and (c) eight (8)-months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F of the Local Rules.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.**

**Please state below the subjects on which discovery may be needed.**

1.   All matters pertaining to the allegations contained in Plaintiffs' Complaint, and any defenses and affirmative defenses available to Defendants.

2.   Information pertaining to any additional claims and issues raised during the course of discovery.

3.      Information pertaining to Plaintiffs' alleged damages and mitigation thereof.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The parties intend to conduct discovery expeditiously. In light of the current pandemic crisis and potential need for international travel in this case, however, the parties reserve the right to move the Court for a discovery extension if necessary, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

**11.   Discovery Limitation:**

**(a)      What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

Pursuant to Fed. R. Civ. P. 5(b)(2)(e), the parties consent to service by electronic means with respect to discovery requests and responses, in which event such service is complete upon transmission. The parties suggest no additional limitations.

**(b)      Is any party seeking discovery of electronically stored information?**

**  X   Yes                          ___ No**

**If "yes,"**

**(1)    The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:**

The parties have discussed and will continue to discuss the extent of electronic discovery and believe any issues that may arise can be resolved amicably.

**(2)    The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:**

Electronically stored information may be produced in searchable PDF format and metadata need not be produced as a matter of course. To the extent that any party believes, on a case-by-case basis, that metadata for a specific document or class of documents should be produced, the parties reserve the right to discover such documents and will meet and confer in good faith to determine what production is necessary.

**12.    Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

None at this time.  The parties may, however, prepare a consent protective order to limit the use and disclosure of confidential and proprietary information disclosed during discovery.

**13.   Settlement Potential:**

**(a)    Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held April 16, 2020, and that they participated in settlement discussions.  Other persons who participated in the settlement discussions are listed according to party.**

For Plaintiff: Lead counsel (signature):  /s/ Thomas J. Mew
For Defendants: Lead counsel (signature):  /s/ Robert A. Luskin
Other participants: /s/Alyce B. Ogunsola

**(b)    All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(_____) A possibility of settlement before discovery.

(_ X _) A possibility of settlement after discovery.

(_____) A possibility of settlement, but a conference with the judge is needed.

(_____) No possibility of settlement.

**(c)    Counsel (_ X _) do or (_____) do not intend to hold additional conferences among themselves prior to the close of discovery.**

**(d)** **The following specific problems have created a hindrance to settlement of this case.**

The parties have not conducted discovery.

**14.** **Trial by Magistrate Judge:**

**Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.**

**(a)** **The parties (___) do consent to having this case tried before a magistrate judge of this Court. A completed Consent to Jurisdiction by a United States Magistrate Judge form has been submitted to the clerk of court this _____ day, _____, of 2017.**

**(b)** **The parties ( X ) do not consent to having this case tried before a magistrate judge of this Court.**

**15.** **Electronic Discovery**

**The parties have discussed and will continue to discuss the extent of electronic discovery. Initially, the parties plan to exchange written discovery. Upon the production of documents, the parties may identify specific documents to be produced in native format. The Parties agree to preserve relevant electronically stored data in their possession.**

Respectfully submitted this 21st day of April, 2020.

BUCKLEY BEAL, LLP                    GOODMAN MCGUFFY LLP

*/s/ Thomas J. Mew*                      */s/ Robert A. Luskin*
Thomas J. Mew                        Robert A. Luskin (with express permission)
Georgia Bar No. 503447               Georgia Bar No. 004383
tmew@buckleybeal.com                 RLuskin@GM-LLP.com

21

600 Peachtree Street, Suite 3900     3340 Peachtree Road, NE, Suite 2100
Atlanta, Georgia  30308           Atlanta, Georgia  30326
Telephone: (404) 781-1100       Telephone:  (404) 264-1500
Facsimile: (404) 781-1101        Facsimile:   (404) 264-1737
ATTORNEYS FOR PLAINTIFFS    ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2020, I electronically filed the parties'

**JOINT PRELIMINARY REPORT AND DISCOVERY PLAN** with the Clerk

of Court using the CM/ECF system which will automatically send email

notification of such filing to all attorneys of record.

**BUCKLEY BEAL, LLP**

/s/*Thomas J. Mew*
Thomas J. Mew
Georgia Bar No. 503447